## Elliott Estate

*Burke & Burke*, for accountant.

*Henry Houck*, for surviving parents.

*John A. Miernicki*, for decedent's widow.

GANGLOFF, P. J., February 26, 1951.—Nevin E. Elliott died on May 6, 1948, intestate, leaving to survive him his spouse, Marion Elliott, and his parents, Edward J. and Mary E. Elliott, as his heirs and next of kin entitled to his estate under our Intestate Act of 1947. Under the provisions of that act the surviving spouse is entitled to the "first ten thousand dollars in value and one-half of the balance" of decedent's estate and his surviving parents take the remaining one half as tenants by entireties. Of course, these interests are subject to debts, funeral and administration expenses and taxes.

The Federal estate tax paid thus far is $2,319.71, plus $76.95, or $2,396.66. Final clearance has not been received and according to letter of February 13, 1951, from the Collector of Internal Revenue, it may require as many as six months for the bureau to complete a final audit of the tax liability. Until that final audit is completed there will remain the question of whether the amount already paid represents payment

in full of the Federal estate tax. The accountant will retain sufficient cash to cover possible additional estate taxes.

There being more than one beneficiary of decedent's gross estate returned for Federal estate tax purposes, this court is required to prorate that tax in the manner indicated in the Tax Proration Act of July 2, 1937, P. L. 2762 (section 48.1 of the Fiduciaries Act of 1917, not repealed by the Fiduciaries Act of 1949). The Federal estate tax is an excise levied upon the transfer of the estate at the death of the owner and is to be distinguished from an inheritance tax, which is a tax upon the receipt of benefits under the law or decedent's will: Wilkinson's Estate, 37 D. & C. 243; in other words, the Federal estate tax, unlike the normal State inheritance tax, is a tax upon the property of decedent, and it is left to the State to determine what interests in the estate should bear the burden of the taxes: Harvey Estate, 350 Pa. 53. The tax is payable in the first place by the administrator (in the instant case) and the amount of the tax so paid "shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred, or to whom any benefit accrues" (quoted from Tax Proration Act of 1937, supra).

The "persons interested", quoting from the same act, "include all persons who may be entitled to receive or who have received any property or interest which is required to be included in the gross estate of a decedent, or any benefit whatsoever with respect to any such property or interest, whether under a will or intestacy, or by reason of any transfer, trust, estate, interest, right, power, or relinquishment of power, taxable under any of the aforementioned laws, providing for the levy or assessment of estate taxes".

The gross estate under our Federal estate tax laws contemplates not only all property actually owned by

decedent at the time of his death but generally all property passing to or vesting in others by reason of the death of decedent. Gross estate therefore includes jointly held property and life insurance proceeds, both of which are found in the estate before the court. Of course, the joint ownership with right of survivorship property and the life insurance proceeds payable to named beneficiaries do not pass through the hands of the administrator but the Tax Proration Act, supra, provides for such a situation, namely:

"In all cases in which any property required to be included in the gross estate does not come into the possession of the executor, administrator or other fiduciary as such, he shall recover from whomever is in possession, or from the persons interested in the estate, the proportionate amount of such tax payable by the persons interested in the estate with which such persons are chargeable under the provisions of this section, and the orphans' court may, by order, direct the payment of such amount of tax by such persons to the executor, administrator or other fiduciary . . . (b) The orphans' court, upon making a determination as provided in subdivision (a) of this section, shall make a decree or order directing the executor, administrator or other fiduciary to charge the prorated amounts against the persons against whom the tax has been so prorated, in so far as he is in possession of property or interests of such persons against whom such charge may be made . . ."

The gross estate returned for Federal tax purposes and upon which the above-mentioned tax of $2,396.66 was paid is valued at $252,079.06; the debts and expenses taken as deductions are $81,197.58 leaving an adjusted gross estate of $170,881.48. The full marital deduction of one half or $85,440.74, was taken, leaving a net taxable balance of $85,440.74, from which the $60,000 exemption was deducted. The resulting net

taxable balance of $25,440.74 was the amount upon which the tax actually paid thus far was calculated. We are now faced with the primary question of proration of the tax so paid. For our guidance we again turn to Harvey Estate, supra, where the court states at page 58:

" 'In determining the purpose of this Act [the Tax Proration Act of 1937] we must refer to the Internal Revenue Act which it was enacted to execute and to whose terms it refers and partly adopts. Given this setting, it is unquestionable that the purpose of the Pennsylvania Act is to equitably apportion the burden of the tax. Therefore, in our opinion the application of the equitable doctrine of contribution demands that the tax be borne commensurately by those whose gifts contribute to the tax burden and conversely that there be eliminated from such burden all whose legacies do not in any way create or add to the tax. This is best illustrated by supposing the case of an estate wherein everything is bequeathed to public, charitable or religious purposes. In such case, under the Revenue Act, to the extent that the charity actually receives the money, it is exempt from Federal tax. On the other hand, in an estate where there are no such gifts, all of the legacies pay proportionately, because they all contribute to the burden of the tax. The act lacks an express direction to "thrust" any of the tax upon the charities and, therefore, we cannot conceive that the Pennsylvania Legislature intended to violate the spirit of the Federal Act, whose provisions allowing the deductions of the charitable legacies are practically written into the Pennsylvania Act . . .' "

Decedent here died after the effective date of the amendment of the Internal Revenue Code by the 1948 Revenue Act. Section 361 of the latter act introduced a marital deduction applicable to any interest in property passing from decedent to the surviving spouse.

Section 812 of the Internal Revenue Code, as amended under section 361(a) of the 1948 Revenue Act, provides 26 U. S. C. §812:

"Net Estate.

"For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate. . . .

"(1) Allowance of Marital Deduction.

"(A) In General. An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate. . . .

"(H) Limitation on Aggregate of Deductions. The aggregate amount of the deductions allowed under this paragraph (computed without regard to this sub-paragraph) shall not exceed 50 per centum of the value of the adjusted gross estate, as defined in paragraph (2)."

That the marital deduction provisions of the 1948 Revenue Act are applicable here there can be no doubt, and it is equally clear that the amount of the marital deduction is not subject to the tax, or, in other words, the marital deduction, like bequests to public, charitable or religious purposes, does not contribute to the Federal estate tax burden. And since the marital deduction is exempt from the Federal estate tax it follows that it is not to be included in making a proration of the tax paid. That this is so clearly appears in Harvey Estate, supra.

Upon examination of the return of gross estate for Federal taxation, the amended values thus far fixed by the Internal Revenue Department, and the data furnished to the court in letter of February 12, 1951, from counsel for the accountant, we find that decedent's widow takes, as survivor of jointly held property with her husband, land in Wayne County, Pa., valued at

$3,000 and U. S. savings bonds, series E, valued at $3,837; she also takes as sole beneficiary $10,023.24 in life insurance proceeds; a total of $16,860.24. Edward J. Elliott, father of decedent, received as beneficiary of a life insurance policy $32,377. These two totals representing individual ownership amount to $49,237.24. The adjusted gross estate is $170,881.48 plus $23.24 (collector's revision of $10,000 life insurance policy payable to widow) minus $223 (collector's revision of life insurance payable to Edward J. Elliott from $32,600 to $32,377) or $170,681.72. From this we deduct $49,237.24, thereby giving us $121,-444.48. Of this latter total the surviving spouse would be entitled to $10,000 plus one half of the balance, or $65,722.24; her grand total therefore is $16,860.24 and $65,722.24 or $82,582.48. (It may be noted parenthetically that the real estate was sold for amounts which do not coincide with appraised values but this does not affect the question of tax proration for the reason that proration must be calculated upon the basis of the amounts used by the tax collector). The amount going to decedent's parents would be $88,-099.24.

We now turn back to the provisions of section 812-(H) of the Internal Revenue Code, as hereinbefore quoted. That section limits the marital deduction to 50 percent of the value of the adjusted gross estate. However, under the regulations of the Internal Revenue Department, the transfer inheritance tax for which the surviving spouse is liable must be deducted for the purpose of fixing the amount of the marital deduction. For example, the maximum marital deduction in the present case could be 50 percent of $170,681.72 or $85,340.86; that is $86,460.49 minus $1,119.63, the widow's inheritance tax liability. See Internal Revenue Regulations 81.47 c(c). As already mentioned, the actual share of the widow is less than 50 percent of

the adjusted gross estate. And so we discover, after a somewhat tedious and perhaps lengthy discussion, that not one dollar of what the widow received and will receive in this case, as the record now stands, has contributed to the Federal estate tax burden. And certainly, as is the case with bequests for charitable or religious purposes, she is not called upon, as we have already mentioned, to pay any part of a tax which is not assessed upon the interest received by her.

In view of what has been said we conclude that the Federal estate tax of $2,396.66 must be paid by decedent's parents.